IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Kareem Jabbar Leaphart, | ) | Civil Action No.:2:15-cv-04910-JMC-MGB |
| | ) | |
| Petitioner, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| v. | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| Warden Willie L. Eagleton, | ) | |
| | ) | |
| Respondent. | ) | |

The Petitioner, a state prisoner, seeks habeas relief pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the Respondent's Motion for Summary Judgment.  (Dkt. No. 9; *see also* Dkt. No. 8.) Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant petition for relief and submit findings and recommendations to the District Court. The Petitioner, through counsel, filed the instant action on December 10, 2015. (Dkt. No. 1.) On March 24, 2016, Respondent filed a Motion for Summary Judgment. (Dkt. No. 9; *see also* Dkt. No. 8.) On June 30, 2016, Petitioner filed a Response in Opposition to the Motion for Summary Judgment, to which Respondent filed a Reply. (*See* Dkt. No. 19; Dkt. No. 20.)

## PROCEDURAL HISTORY

The Petitioner is currently confined within the South Carolina Department of Corrections ("SCDC"). In December of 2006, the Lexington County Grand Jury indicted Petitioner for distribution of crack cocaine (2006-GS-32-4051) and resisting arrest (2006-GS-32-4053). (Dkt. No. 8-3 at 392-395.) Petitioner was represented by Arie D. Bax, Esquire, and Matthew Buchanan, Esquire. (Dkt. No. 8-1 at 3.) Petitioner proceeded to a jury trial before the Honorable R. Knox McMahon on January 9-10 of 2007. (*Id.* at 3-204; 8-2 at 1-45.) The jury convicted Petitioner on both charges,[1] and Judge McMahon sentenced Petitioner to eighteen years on the

---

[1]Petitioner was also tried on January 9-10 of 2007 on charges of possession with intent to distribute crack cocaine (2006-GS-32-1541) and possession with intent to distribute cocaine (2006-GS-32-4055); the jury found Petitioner not guilty of those charges. (*See* Dkt. No. 8-2 at 13.)

conviction for distribution of crack cocaine and five years, consecutive, on the conviction for resisting arrest. (Dkt. No. 8-1 at 12-13.)

Immediately after sentencing, the solicitor brought it to Judge McMahon's attention that one of the witnesses against Petitioner indicated that Petitioner "made a gesture towards [her] . . . by placing his finger to his temple and acting like a gunshot." (Dkt. No. 8-2 at 26.) After conferring with Mr. Bax, Petitioner proceeded with the contempt hearing. Judge McMahon found Petitioner to be in contempt and sentenced him to six months, consecutive to the previous sentences. (*Id*. at 246-47)

Petitioner appealed and was represented by Eleanor Duffy Cleary, Esquire. (*See* Dkt. No. 8-6.) On April 22, 2008, Petitioner filed a Final *Anders* Brief of Appellant,[2] wherein he raised the following issue: "Whether appellant is entitled to a directed verdict of acquittal because the state's evidence only raised a suspicion of guilt?" (Dkt. No. 8-6 at 4.) Ms. Cleary also filed a petition to be relieved as counsel. (*Id*. at 8.)

In an unpublished opinion filed on November 5, 2009, the South Carolina Court of Appeals dismissed the appeal and granted counsel's request to be relieved. (Dkt. No. 8-7.) The matter was remitted to the lower court on November 23, 2009. (Dkt. No. 8-8.)

On March 15, 2010, Petitioner filed an application for post-conviction relief ("PCR"). (Dkt. No. 8-2 at 47-57.) The following questions and answers appeared in his PCR application (verbatim):

10. State concisely the grounds on which you base your allegation that you are being held in custody unlawfully:

(a) Prosecutorial Misconduct
(b) Ineffective Assistance of Counsel
(c) Subject Matter Jurisdiction

11. State concisely and in the same order the facts which support each of the grounds set out in (10):

---

[2]See *Anders v. California*, 386 U.S. 738 (1967).

(a) Improperly filed indictments in violation of Rules 3(b) and (c)–see attached.
(b) Failure to quash indictments and arrest warrants–see attached.
(c) Improperly filed indictments in violation of Rules 3(b) and (c) of the SCRCrim P. The court lacked jurisdiction because the Applicant's warrants are not signed by the arresting officer, or the issuing magistrate judge.

(*Id.* at 48.) Petitioner also asserted that counsel was ineffective in failing to "object to the indictment language"; that he had a "constitutional right to review grand jury impanelment docket"; and that counsel was ineffective in failing to "object to [Petitioner's] illegal sentence." (*Id.* at 52, 55-56.)

On August 20, 2010, Petitioner supplemented his application for PCR to include the following allegations of ineffective assistance of counsel:

(a) counsel failed to "properly investigat[e] and challeng[e] purjury [sic] testimony";

(b) counsel failed "to investigate standard procedure of the submitting narcotic bill used in the transaction of a control buy by officer operating a sting operation";

(c) counsel failed "to object to the chain of custody throughout [the] trial";

(d) counsel failed "to object to the use of videotape where the testimony contradicts the showing of video";

(e) counsel failed "to challenge chemist testimony of experience while committing purjury [sic]";

(f) counsel "allow[ed] the solicitor to give a false and misleading opening statement"; and

(g) counsel failed to "properly investigat[e] the proper procedure of a control buy by the officers conducting a sting operation.

(*Id.* at 58-61.)

On August 29, 2011, an evidentiary hearing was held before the Honorable William P. Keesley. (*Id.* at 66.) Petitioner was present and represented by Henry H. Taylor, Esq.  In an order dated October 18, 2011, Judge Keesley denied the application for post-conviction relief

3

and dismissed the petition. (Dkt. No. 8-3 at 15-291.) On November 8, 2011, Petitioner filed a Motion to Reconsider, Alter or Amend. (*Id*. at 3-6.) In an order filed September 13, 2012, Judge Keesley denied Petitioner's Motion to Reconsider, Alter or Amend. (*Id*. at 11-14.)

Petitioner appealed, and on May 30, 2013, through Attorney LaNelle Cantey DuRant of the South Carolina Commission on Indigent Defense, he filed a *Johnson* Petition for Writ of Certiorari.[3] (Dkt. No. 8-10.) Therein, Petitioner raised the following issue:

> Did the trial court err in failing to find trial counsel ineffective for not objecting to the state returning the money used for the purchase of the drugs to the bank without having the court make a determination that these were the actual monies used pursuant to S.C. Code Section 44-53-582?

(Dkt. No. 8-10 at 3.) Ms. DuRant also filed a petition to be relieved as counsel. (Dkt. No. 8-10 at 9.) Petitioner filed a *pro se* response to the *Johnson* petition. (*See* Dkt. No. 8-11.)

In an order filed January 22, 2015, the South Carolina Court of Appeals denied the petition for a writ of certiorari and granted counsel's request to withdraw. (Dkt. No. 8-12.) The matter was remitted to the lower court on February 9, 2015. (Dkt. No. 8-13.)

Petitioner, through counsel, then filed the instant habeas petition, wherein he raises the following grounds for review:

> **GROUND ONE**: Trial Counsel violated Petitioner's Sixth Amendment right to effective assistance of counsel by failing to object to the sufficiency of the Indictment against him for Distribution of Crack Cocaine.
>
> **GROUND TWO**: Trial Counsel failed to provide Petitioner effective assistance of counsel in that he failed to object to the introduction of a photographic copy of currency which the State claimed could be tied to Petitioner as the "buy money" in the drug transaction attributed to Petitioner.
>
> **GROUND THREE**: Trial Counsel was ineffective for failing to object to inaccurate and misleading remarks by the prosecution in its opening statement to the jury where said statements erroneously informed to [sic] the jury that the evidence to be presented by the State was far more conclusive than the evidence actually available to the State in this case.

---

[3]*See Johnson v. State*, 294 S.C. 310, 364 S.E.2d 201 (1988).

4

**GROUND FOUR**: Trial Counsel was ineffective for failing to challenge the admissibility of the drug evidence in this case where the State failed to establish a proper Chain of Custody through the submission of notarized Chain of Custody forms.

**GROUND FIVE**: Trial Counsel provided Petitioner ineffective assistance of counsel in violation of his rights pursuant to the Sixth and Fourteenth Amendments to the United States Constitution where Counsel failed to adequately investigate proper police procedure for conducting an undercover drug buy and failed to use knowledge of such procedures to adequately challenge the manner in which the drug transaction with which Petitioner was charged was handled and documented.

(Dkt. No. 1-1.)

## APPLICABLE LAW

**Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

**Habeas Standard of Review**

Because the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## DISCUSSION

As noted above, Respondent seeks summary judgment in the instant case. (Dkt. No. 9; *see also* Dkt. No. 8.) Before turning to the merits of the individual grounds for relief, the undersigned will briefly review the facts of this case.

Douglas Curry, a narcotics agent employed by the Sheriff's Office in Lexington, testified that the Sheriff's Office had received several complaints from citizens living in a mobile home park in West Columbia that they believed drug activity was going on in the area. (Dkt. No. 8-1 at 48-49.) Curry testified that, as a result of these complaints, on March 15, 2006, he and other members of his team decided to "go out there and make an undercover sting." (*Id.* at 48.) Curry stated that they "use an undercover officer in an undercover car, and [they] go out and see if [they] have any takers on [their] undercover sting." (*Id.*) According to Curry, the police "went to the bank, took some money out of [their] narc account," and "issued it" to John Moore to make the undercover buys. (*Id.* At 50-51.) Curry testified that they issued the money to John Moore, and the other officers stayed on the perimeter "like a holding pattern." (*Id.*) Curry stated that Moore's vehicle was fitted with a monitoring device so that police could hear what was

6

2:15-cv-04910-JMC-MGB     Date Filed 01/23/17    Entry Number 21     Page 7 of 25

going on in the vehicle. (*Id*. at 52.) Curry testified that Petitioner approached Moore's vehicle and "told John to cut the block." (*Id*. at 52-53.) According to Curry, Moore drove around the block and came back to Petitioner; when the drug deal was complete, Moore "told [them] to go ahead and affect an arrest." (*Id*. at 53.) When the other officers "rolled up," Petitioner took off running. (*Id*.) Curry stated, Mr. Leaphart took off between two trailers right on the roadway. And as he did, he took what was in his pocket, threw it down on the ground, and continued to run with Agents Gleaton and Strange in pursuit. (*Id*. at 53-54.)

Curry identified State's Exhibit 1 as "the money or some of the money" that Petitioner threw and Curry picked up; the exhibit was admitted over counsel's objection under Rules 1002 and 1003. (*Id*. at 55.) As to State's Exhibit 2, Curry testified that the contents of that were "the one piece of crack cocaine that we originally purchased from [Petitioner], along with a baggie that contained several other pieces and a small baggie of powder cocaine"; according to Curry, "[t]his is what [Curry] recovered on the way back to [his] truck that [Petitioner] had thrown down when he took off running." (*Id*. at 56.) Curry clarified that Exhibit 2-B was the crack that Moore purchased from Petitioner; Exhibit 2-C "is the baggie that contained crack cocaine that [Petitioner] threw down, along with the $20 that he had gotten from John Moore when [officers] began chasing [Petitioner]"; and Exhibit 2-A was the cocaine powder that was in the baggie. (*Id*. at 77.)

John Moore, an employee of the Lexington County Sheriff's Office assigned to the narcotics unit, testified that on the day in question, he went undercover at the trailer park, "rid[ing] through it and see[ing] if anybody would sell [drugs] to [him]." (*Id*. at 102-03.) He testified that State's Exhibit 3 was a videotape of the transaction as it occurred that day; it was admitted into evidence without objection. (*Id*. at 103-04.) Moore testified that he pulled into the parking lot, and the Petitioner approached Moore, asking him what he needed. (*Id*. at 105.) According to Moore, after some conversation, including the Petitioner asking to see Moore's "stem" (or "the tool or pipe that you use to smoke the crack with"), the Petitioner asked Moore

to "cut around the block." (*Id.* at 105-07.) Moore testified that he cut the block, came back up to the Petitioner, received the crack from the Petitioner, and gave the Petitioner the $40. (*Id.* at 107-08.) Moore testified that he gave the Petitioner "$40 of narcotics funds, and [Petitioner] handed [Moore] some crack cocaine." (*Id.* at 105.) Moore identified State's Exhibit 2-B as the crack he received from Petitioner and gave to Agent Curry. (*Id.* at 109.)

Emily Homer, a chemist employed by the Lexington County Sheriff's Department, testified that State's Exhibit 2-A was .47 grams of cocaine hydrocholoride; State's Exhibit 2-B was .35 grams of cocaine base (also known as crack); and State's Exhibit 2-C was .94 grams of cocaine base. (Dkt. No. 8-1 at 134, 137-38.) State's Exhibit Numbers 2-A, 2-B, and 2-C were admitted during Ms. Homer's testimony. (*Id.* at 139-40.)

As noted above, the jury convicted Petitioner of distribution of crack cocaine and resisting arrest. Petitioner was found not guilty of possession with intent to distribute crack cocaine and possession with intent to distribute cocaine. (*See* Dkt. No. 8-2 at 13.)

Having reviewed the factual background of the case, the undersigned now turns to Petitioner's individual grounds for relief. For the reasons set forth herein, the undersigned recommends granting the Motion for Summary Judgment. (Dkt. No. 9.)

**A.**    **Ground One**

The Petitioner asserts in Ground One that counsel was ineffective in "failing to object to the sufficiency of the Indictment against him for Distribution of Crack Cocaine." (Dkt. No. 1-1 at 2.) The Petitioner states,

> It is Petitioner's position that the Indictment against him for distribution of crack cocaine, 2006–GS–32–4051, was fatally insufficient where the language of that Indictment failed to set forth with specificity all the elements of the crime charged therein and thereby failed to put him on adequate notice of all the specific actions he was accused of committing.

(*Id.*)

The PCR court addressed this claim on the merits, first noting the following testimony:

Applicant testified that counsel failed to object to the indictments, specifically the sufficiency of the indictment in that the indictment did not provide the substance was crack. Applicant testified that the indictment did not allege the proper facts for distribution to put the Applicant on notice about the charge. He testified that the Solicitor violated Rule 3 because he was not indicted within 90 days of his arrest warrant.
. . .
Trial counsel testified that he has practiced criminal law for over seven (7) years and that he was a public defender when he was appointed to represent the Applicant. . . .

Counsel testified that he had experience with drug cases and the legal issues surrounding sufficiency of indictments prior to Applicant's trial. Counsel testified that he did not find any problems with the indictments. He testified that he did not object to the indictments based on Rule 3 because any violation of Rule 3 is not a jurisdictional issue and not a basis to overturn an indictment unless prejudice can be shown and that did not happen in Applicant's case.

(Dkt. No. 8-3. at 17-21.)

The PCR court concluded Petitioner was not entitled to relief on this claim of ineffective assistance of counsel, stating,

This Court finds that Applicant's allegation that counsel was ineffective in failing to object to the indictments . . . is without merit. At the PCR hearing Applicant testified that the indictment was insufficient because it failed to provide the substance was crack, that the proper facts were not alleged in the indictment to put the Applicant on notice about the charge. Counsel testified that he has experience with handling drug cases, is familiar with the issues surrounding sufficiency of indictments, and that he reviewed the indictments with the Applicant and did not see any grounds on which to base an objection. Counsel testified that he did not object to the indictments based on Rule 3 because any violation of Rule 3 is not a jurisdictional issue and not a basis to overturn an indictment unless prejudice can be shown and that did not happen in Applicant's case. . . . This Court finds that trial counsel provided a rational explanation as to why he did not object to the indictments. . . . Trial counsel also testified that even if he had objected to the indictments . . . , it would not have made any difference at trial. This Court accepts trial counsel's reasoning as to why he did not object. Furthermore, there has been no showing by the Applicant that the outcome of his trial would have been different had these objections been made. This Court finds that Applicant has failed to show counsel's performance was deficient and that Applicant was prejudiced by counsel's alleged deficiencies; therefore, this allegation is denied and dismissed.

(*Id*. at 23-24.)

9

The undersigned recommends granting summary judgment to Respondent as to Ground One of the habeas petition. The United States Supreme Court has said that a meritorious ineffective assistance of counsel claim must show two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984). A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted); *see also Bowie v. Branker*, 512 F.3d 112, 119 n.8 (4th Cir. 2008); *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297–99 (4th Cir. 1992); *Roach v. Martin*, 757 F.2d 1463, 1467 (4th Cir. 1985). In order to establish the second prong of *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." *Id.* While *Strickland* itself is a deferential standard, when both § 2254(d) and *Strickland* apply, "review is doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Indeed, when § 2254(d) applies, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

The indictment at issue in Ground One provided as follows:

At a court of General Sessions, convened on DECEMBER, 2006, the Grand Jurors of Lexington County present upon their oath:

That Kareem Jabbar Leaphart did in Lexington County on or about March 15, 2006, knowingly and intentionally distribute Crack Cocaine, a controlled substance under provisions of § 44-53-110, et. Seq. Code of Laws of South Carolina 1976, as amended, in violation of § 44-53-375(B), Code of Laws of South Carolina, 1976, as amended.

10

(Dkt. No. 8-3 at 33.) Contrary to Petitioner's assertions, the indictment specifically identifies the substance Petitioner was charged with distributing as "Crack Cocaine." (R. at 393.) Furthermore, under South Carolina law, an indictment is simply a notice document. *State v. Gentry*, 363 S.C. 93, 610 S.E.2d 494 (2005). Petitioner has not shown that the state court's rejection of this claim of ineffective assistance of counsel was contrary to, or an unreasonable application of, clearly established federal law; nor has Petitioner shown the state court's determination was based on an unreasonable determination of the facts. *See Winns v. State*, 363 S.C. 414, 611 S.E.2d 901 (2005); *see also Jones v. State*, 333 S.C. 6, 8, 507 S.E.2d 324, 326 (1998) ("As to the place the crime was committed, the statute requires only that it be sufficiently alleged so as to lay the jurisdiction of the court and inform the accused of the county in which he is charged with a violation of the law. . . . Here, the facts alleged in the indictment assert the offenses were committed in Beaufort County. This is sufficient to satisfy the requirements of the law and confer jurisdiction upon the court in that county . . . ."); *Williams v. Scott*, 55 F.3d 632, 1995 WL 313943, at *2 (5th Cir. May 3, 1995) (unpublished) (stating, in rejecting ineffective assistance claim, "[w]e stated that the wording of the indictments was sufficient to provide Williams with notice of the essential elements of the charges against him, including intent. Accordingly, Williams was not prejudiced by his attorney's failure to object to the indictments."); *Clinkscales v. Stevenson*, No. 6:11-1160-TMC-KFM, 2012 WL 1030345, at *12 (D.S.C. Jan. 12, 2012), *adopted at* 2012 WL 1030256 (D.S.C. Mar. 27, 2012). Respondent is entitled to summary judgment on Ground One.

**B.    Ground Two**

In Ground Two, Petitioner asserts that counsel was ineffective in failing "to object to the introduction of a photographic copy of currency which the State claimed could be tied to Petitioner as the 'buy money' in the drug transaction attributed to Petitioner." (Dkt. No. 1-1 at 2.) Petitioner contends that while counsel did object to introduction of the photographic copy

of the currency based on Rules 1002 and 1003 of the South Carolina Rules of Evidence[4], counsel was ineffective (a) in failing to object "to the State's failure to lay a proper foundation for the introduction of this evidence"; (b) in failing to object "to the repeated assertions by Agent Curry that the money in question was the buy money . . . where the record . . . is completely void of any evidence whatsoever that serial numbers, or any other distinguishing features of the money used, were recorded through any method"; (c) in failing to object to introduction of the evidence pursuant to Rules 401 and 402 of the South Carolina Rules of Evidence[5]; (d) in failing to argue that introduction of the photographic copy violated Rule 803(b) of the South Carolina Rules of Evidence and his rights under the Confrontation Clause; (e) failing to object to the money "being re-deposited in the bank and a photocopy being substituted for the actual funds in violation of S.C. Code Ann. § 44-53-582." (Dkt. No. 1-1 at 2.)

Respondent contends that only the Petitioner's final argument– that counsel was ineffective for failing to object under S.C. Code Ann. § 44-53-582–is properly preserved for this court's review. (Dkt. No. 8 at 39-49.) Respondent argues that the Petitioner's other arguments in Ground Two are procedurally barred. (*Id.* at 20, 43-49.) In order to assess that contention, the

---

[4] Rule 1002 states, "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute." Rule 1003 states, "A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."

[5] Rule 401 states, "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 states, "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of South Carolina, statutes, these rules, or by other rules promulgated by the Supreme Court of South Carolina. Evidence which is not relevant is not admissible."

undersigned first examines the claims addressed by the PCR court. The PCR court noted the

testimony relevant to Ground Two as follows:

> [Petitioner] testified that this was a sting purchase of $40 for crack cocaine to
> Officer John Moore. Applicant testified that the money used in the sting buy was
> not placed into evidence, but that photocopies of the money were used as
> evidence. Applicant testified that at his trial Doug Curry stated the actual money
> had been submitted back to the bank and Applicant asserted this was in violation
> of S.C. Code § 44-53-582, and that counsel did not raise this argument at trial.
> . . .
> Counsel testified that there were complaints from a trailer park about drug
> transactions taking place, that the Lexington County MANET conducted a sting
> operation, and that this sting operation led to the Applicant's arrest. . . . Counsel
> testified that he and the Applicant discussed the Applicant's version of the facts
> and that the Applicant told counsel he only had a conversation with Officer
> Moore, not a drug transaction because Applicant ran when all the cop cars came
> out, before any transaction occurred. . . . Counsel testified that the trial strategy
> was that no one saw Applicant drop any money or drugs because of the distance
> between the Applicant and the Officers.
> . . .
> Counsel testified that he objected to the photocopies of the cash pursuant to the
> best evidence rule but that he was overruled. . . .
> Counsel testified that S.C. Code § 44-53-582 did not render the photocopies of
> the money inadmissible because the statute just directs the money be returned
> to another agency.

(Dkt. No. 8-3 at 15-30.)

The PCR court addressed this claim as a claim of ineffective assistance of counsel for

failing "to investigate procedure of submitting narcotic bills used in transaction of a control

buy." ( Dkt. No. 8-3 at 25-26.) The PCR court stated,

> This Court finds Applicant's allegation that trial counsel was ineffective for
> failing to investigate the procedure of submitting narcotic bills used in the
> transaction of a control buy is without merit. Counsel testified that he has
> handled drug cases, including control buy situations, and that he is familiar with
> the legal issues involved with the buy money. Counsel testified that he
> interviewed Officers Curry and Moore about the transaction. The record reflects
> counsel objected to the use of photocopies of the money based on the best
> evidence rule and cited the rule to the trial judge. Counsel further testified that
> he did not think even if he objected using S.C. Code § 44-53-582, it would have
> changed the outcome of Applicant's trial. "Failure to conduct an independent
> investigation does not constitute ineffective assistance of counsel when the
> allegation is supported only by mere speculation as to the result." *Moorehead*

13

> *v. State*, 329 S.C. 329, 496 S.E.2d 415 (1998). To establish counsel failed to adequately prepare for trial, Applicant must present evidence of what counsel could have discovered or what other defenses could have been pursued had counsel more fully prepared. *Jackson v. State*, 329 S.C. 345, 495 S.E.2d 768 (1998). The Applicant asserted trial counsel should have based his objection on S.C. Code § 44-53-582, however this statute is not relevant to the admissibility of the money used in a control buy. Counsel objected to the use of the photocopies and argued best evidence in his closing argument. This Court finds there has been no showing by the Applicant of what counsel could have discovered upon additional investigation. *Id*. This Court finds that Applicant has failed to show counsel's performance was deficient and any resulting prejudice; therefore, this allegation is denied and dismissed.

(*Id.*)

The PCR court ruled on the Plaintiff's alleged error regarding S.C. Code § 44-53-582. The Plaintiff contends that trial counsel was ineffective for failing to object to photocopy of the bills because the two $20.00 bills were re-deposited in the bank in violation of S.C. Code § 44-53-582. (Dkt. No. 19 at 8.)  S.C. Code § 44-53-582 states the following:

> All monies used by law enforcement officers or agents, in the line of duty, to purchase controlled substances during a criminal investigation must be returned to the state or local agency or unit of government furnishing the monies upon a determination by the court that the monies were used by law enforcement officers or agents, in the line of duty, to purchase controlled substances during a criminal investigation. The court may order a defendant to return the monies to the state or local agency or unit of government at the time of sentencing.

The PCR court ruled that the statute was inapplicable to the facts of this case. (Dkt. No. 8-3 at 26.)  Petitioner has not shown that the PCR court's rejection of this claim of ineffective assistance of counsel was contrary to, or an unreasonable application of, clearly established federal law; nor has Petitioner shown the state court's determination was based on an unreasonable determination of the facts. *See Winns v. State*, 363 S.C. 414, 611 S.E.2d 901 (2005).  Indeed, this court concludes that the statute has nothing to do with the admissibility of evidence, but relates solely to a return of money to the law enforcement agencies after use in a drug investigation.  The PCR court's ruling was not contrary to, or an unreasonable application of, clearly established federal law.

14

This court concludes that the Plaintiff's remaining arguments under Ground Two are procedurally defaulted and are without merit. "Federal habeas review of a state prisoner's claims that are procedurally defaulted under independent and adequate state procedural rules is barred unless the prisoner can show cause for the default and demonstrate actual prejudice as a result of the alleged violation of federal law, or prove that failure to consider the claims will result in a fundamental miscarriage of justice." *Lawrence v. Branker*, 517 F.3d 700, 714 (4th Cir. 2008) (quoting *McCarver v. Lee*, 221 F.3d 583, 588 (4th Cir. 2000)). As the Fourth Circuit stated in *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004),

> [The] exhaustion requirement "reduces friction between the state and federal court systems by avoiding the unseem[liness] of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (internal quotation marks and citation omitted). Thus, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"-which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *Id*. at 845, 847, 119 S.Ct. 1728. And this opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir.2000) (citing *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir.1997) (internal quotation marks omitted)). In other words, the ground must "be presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir.1994) (citation and internal quotation marks omitted).

*Longworth*, 377 F.3d at 448.

Procedural default may be excused if the Petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012). In the alternative for showing cause and prejudice, a petitioner may attempt to demonstrate a miscarriage of justice, e.g., actual innocence, *Bousley v. United States*, 523 U.S. 614, 623 (1998); *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995), or

abandonment by counsel. *Maples v. Thomas*, 132 S. Ct. 912, 924 (2012) (inquiring "whether [the petitioner] ha[d] shown that his attorneys of record abandoned him, thereby supplying the extraordinary circumstances beyond his control, necessary to lift the state procedural bar to his federal petition" (internal quotation marks and citations omitted)). The Petitioner has not made any showing sufficient to overcome the procedural bar.

The Petitioner's remaining four (4) arguments under Ground Two were not raised and ruled on by the PCR court, which resulted in the South Carolina Court of Appeals being procedurally barred from ruling on the arguments when the Petitioner raised them in his *pro se* response to the *Johnson* Petition for Writ of Certiorari (Dkt. No. 8-11). *Evans v. State*, 363 S.C. 495, 503, 611 S.E.2d 510, 515 (2005) (holding issues not raised and ruled on by PCR judge were not preserved for appellate review).

The Petitioner asserts that his defaulted claims should be considered by this court pursuant to *Martinez v. Ryan*, 566 U.S. ___, 132 S. Ct. 1309 (2012). In *Martinez*, the Supreme Court held that "ineffective assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 315. However, "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S. Ct. at 1318 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)); *see also Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013). If the ineffective assistance of trial counsel claim "does not have any merit or . . . is wholly without factual support," the procedural default precludes federal habeas review. *Martinez,* 132 S. Ct. at 1319.

The Fourth Circuit has summarized the holding in *Martinez* as follows:

> To summarize, then, *Martinez* held that a federal habeas petitioner who seeks to raise an otherwise procedurally defaulted claim of ineffective-assistance-of-trial-counsel before the federal court may do so only if: (1) the ineffective-assistance-of-trial-counsel claim is a substantial one; (2) the "cause" for default "consist[s] of there being no counsel or only ineffective counsel during the state collateral review proceeding"; (3) "the state collateral review

16

> proceeding was the initial review proceeding in respect to the ineffective-
> assistance-of-trial-counsel claim"; and (4) state law "requires that an
> ineffective-assistance-of-trial-counsel claim be raised in an initial-review
> collateral proceeding."

*Fowler v. Joyner*, 753 F.3d 446, 461 (4th Cir. 2014) (internal quotation marks and citations omitted).

The Petitioner's first three arguments raised in the present petition but not before the PCR judge allege ineffective assistance of counsel. (Dkt. No. 1-1 at 2.) The Petitioner alleges that his trial counsel was ineffective for not objecting to the photograph of the buy money on the basis of the State's failure to lay a proper foundation, failing to object to Agent Curry's testimony that the photographs showed the buy money, and failing to object tp the photograph under Rule 401 and 402, SCRE, because there was no proof the money in the photograph related to the crime. (*Id.*) All of these arguments have the same nexus. All of these arguments are founded on the Plaintiff's argument that there was not sufficient evidence presented at trial that the money depicted in the photograph was the actual money recovered in the drug sting. (Dkt. No. 1-1 at 4-5; 19 at 10-14.) The Plaintiff argues that there is no evidence that the money in the photograph is related to the case and there is no evidence anyone saw the Petitioner discard the money. (*Id.*)

The Petitioner argues that there is no testimony stating that the money in question was thrown down by him. (Dkt. No. 19 at 10.) This is not an accurate depiction of the testimony. Agent Curry testified that, after the drug deal was consummated, he and other officers arrived on the scene and activated their blue lights. (Dkt. No. 55 at 51.) Agent Curry then stated that the Petitioner took off running and "took what was in his pocket [and] threw it to the ground...." (*Id.*) The testimony appears to consist of what Agent Curry observed himself. Agent Curry then later testified that the money in the photograph was the money that he himself retrieved off the ground that the Petitioner had thrown down. (*Id.* At 55.)

Trial counsel cross-examined Agent Curry. Trial counsel elicited testimony that the actual money had been redeposited and had no distinguishing marks. (Dkt. No. 8-1 at 62-63.)

Additionally trial counsel cross-examined Agent Curry regarding other money taken from the Petitioner. (*Id.*)  In his closing argument, trial counsel argued to the jury specifically attacking the photograph of the bills and the lack of any sort of identifying marks. (Dkt. No. 8-1 at 179.)  This was in a line of arguments attacking the police investigation.  At the PCR hearing, trial counsel testified that he had interviewed Agent Curry and other law enforcement and was familiar with the legal issues with money in drug buys. (Dkt. No. 8-1 at 124, 129-132.)

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable ...." *Strickland*, 466 U.S. at 690; *see also Meyer v. Branker*, 506 F.3d 358, 374 (4th Cir. 2007) ("Holding that such a reasoned determination constituted objectively unreasonable performance would be worse than folly: it would essentially require capital defense counsel to present evidence of remorse, even if, in their considered judgment, the evidence would affirmatively hurt their defendant's case. *Strickland* does not require any such outcome.").  The record supports that trial counsel was pursuing a strategy to attack the police investigation.  This court may not second guess the strategic choices made by trial counsel.  The Petitioner has not met his burden under *Strickland* that he was denied ineffective assistance of counsel relating to his claims that trial counsel was ineffective for the following reasons: by not objecting to the photograph of the buy money on the basis of the State's failure to lay a proper foundation; by failing to object to Agent Curry's testimony that the photographs showed the buy money;  and by failing to object tp the photograph under Rule 401 and 402, SCRE.

The Plaintiff's other argument in Ground Two is that trial counsel was ineffective for failing to object to the photograph of the buy money and accompanying testimony because it "violated Rule 803(b), SCRE and specifically violated [the Petitioner's] rights under the Confrontation Clause of the United States Constitution, where the State failed to produce any evidence authenticating the photocopy by presenting testimony from the person who created the photocopy...." (Dkt. No. 1-1 at 2.)  The court notes that "Rule 803(b), SCRE" does not

exist. Rule 803 of the South Carolina Rules of Evidence lists exceptions to the hearsay rule when the availability of the declarant is immaterial. The subsections to Rule 803 are delineated by numbers, not letters. The logical corollary to "803(c)" is Rule 803(3) which is the hearsay exception for a then existing mental, emotional, or physical condition. This rule does not appear to relate to the Petitioner's argument. As to the Petitioner's argument that he was not afforded his Sixth Amendment right to cross-examine his accusers, the argument is without merit. Agent Curry testified that the money in the photograph was the money that he withdrew from the bank and the money he recovered from the ground after Petitioner threw it. Therefore, the photocopy was properly identified and admitted into evidence. As to Ground Two, the Petitioner has failed to meet his burden for habeas relief.

**C.** **Ground Three**

In Ground Three of the Petition, the Petitioner argues that trial counsel was ineffective for failing to object to "inaccurate and misleading" remarks in the State's opening statement. (Dkt. No. 1-1 at 5.) The Petitioner argues that the State falsely told the jury that the Petitioner had thrown down money and drugs, that all of the alleged activity was recorded on video, that the drug transaction was on video, and that the jury would see the very money used by the State to buy the drugs. (*Id.*) The Petitioner argues that his trial counsel was not familiar enough with the discovery and that resulted in his failure to object. (*Id.*)

Th Petitioner has not met his burden under *Strickland* to show counsel was ineffective. At the PCR hearing, trial counsel testified that his decision not to object was a strategy decision. (Dkt. No. 8-2 at 126-27.)

> A: And going into that as far as the opening, you know, as far as the opening argument goes, objections to that can be a double-edged sword because, if you object to something that they might misstate, then they're going to fix it whereas sometimes, if they state something that they might not be able to prove and you're able to wait until closing argument to argue, well, they told you, ladies and gentlemen of the jury, that they were going to have x at the beginning of this trial, and we get to the end of the trial and there's no x, then you've got yourself a point. And there's no use in taking away free points from yourself especially when it's not going to result in a mistrial or an overturn.

19

> Q: So you saw no reason, based on your experience and just the facts that the Solicitor presented, to wait to object?
>
> A: For two reasons. Number one, if he didn't present it, he was going to look foolish. And, number two, he had the audio and he could always change his mind and try to put it in. And I could object to it because I didn't think it was very quality, but I might not win that objection.

(Dkt. No. 8-2 at 126-27.)  The PCR Court ruled that trial counsel had made a strategic decision not to object during the opening. (Dkt. No. 8-3 at 20-21.)

As stated *supra*, "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable ...." *Strickland*, 466 U.S. at 690.  There is no evidence in the record to support the Petitioner's argument that trial counsel failed to object because he was not familiar with the discovery.  To the contrary, trial counsel testified that he had previously discussed with the State what audio and video the State intended to submit as evidence. (*Id.*)  The PCR court's ruling that trial counsel's decision not to object to the State's opening does not offend any federal right.  This court may not "Monday morning quarterback" trial counsel. *Stamper v. Muncie*, 944 F.2d 170, 178 (4th Cir.1991).  The Petitioner has failed to meet his burden.

### D.     Ground Four

In Ground Four of the Petition, Petitioner argues that "[t]rial [c]ounsel was ineffective for failing to challenge the admissibility of the drug evidence in this case where the State failed to establish a proper Chain of Custody through the submission of notarized Chain of Custody forms." (Dkt. No. 1-1 at 6.) The Petitioner argues the trial counsel was ineffective for failing to object to the chain of custody form because it was not notarized despite there being a place on the form to notarize it.  (*Id.*) In his Memorandum of Law in Opposition to the Motion for Summary Judgment, the Petitioner argues that no one testified that they saw the Petitioner drop the crack cocaine and no one testified to watching the crack cocaine from the time it was dropped until the time it was recovered. (Dkt. No. 19 at 19-20.)

At the PCR hearing, trial counsel testified as follows:

Q: I think, specifically, one of the issues that was brought up was that lack of notarization on one of the –

A. I recall that now. Thank you. Actually that forms the the Lexington County Sheriff's Department used and the NET team used, they all have a space for notarization. The officers and the evidence people haven't been notarizing it for years. It's not actually a requirement under the law. There's no–I've done research. At least especially back then. There was no requirement that I ever came across either in case law or in statutory law that they notarize these documents. But it was a useful tool for me that they still had the notarization block on their form because I could ask questions like those, about the fact, like I asked Doug Curry in my recross, that they didn't notarize, and then, one again, try to point that out as sloppy work.

Q. So, while you saw no case law or basis for objection, you did bring that out–

A. I did.

Q. –and try to use it to your advantage?

A. I did.

Q: And you – Just to review the objections you made concerning the chain of custody again with the best evidence rule, you just answered that you weren't able to bring that out, but you did make objections?

A: Well, yeah, it was something that I wanted to bring out to the jury in case I wanted to argue it on closing. It was not something that gave rise to a legal objection to the chain of custody though because there's no legal requirement that they get these notarized. They only need to establish that it went from one hand to the other and that the evidence was substantially in the same shape when it left their hands as it was when they got it into their hands and that they in no way changed it or did something to frame the defendant or something of that nature.

(Dkt. No. 8-2 at 131-32.) The PCR court ruled that the Petitioner's argument was without merit. (Dkt. No. 8-3 at 26.) The PCR court accepted trial counsel's reasons for not objecting and found that the Plaintiff was not prejudiced by the failure to object. (*Id.*)

The PCR court's ruling was not contrary to clearly established Federal law or an unreasonable interpretation of the facts. As stated above, trial counsel's strategic decisions after appropriate investigation are "virtually unchallengeable ...." *Strickland*, 466 U.S. at 690. Trial counsel testified that he had researched the chain of custody issue and used it to the Petitioner's advantage on cross-examination. As to the Petitioner's argument that no one

saw the drugs be thrown down or watch them before they were recovered, his argument is without merit. As discussed above, there was some testimony that the Petitioner threw the drugs down.  Every individual in the chain of custody testified.  *See State v. Hatcher*, 392 S.C. 86, 91, 708 S.E.2d 750, 753 (2011) (holding a party offering fungible items, such as drugs, into evidence must establish a complete chain of custody as far as practicable); *State v. Sweet*, 374 S.C. 1, 6, 647 S.E.2d 202, 205–06 (2007) ("[I]f the identity of each person handling the evidence is established, and the manner of handling is reasonably demonstrated, no abuse of discretion by the trial court is shown in admitting the evidence absent proof of tampering, bad faith, or ill-motive.")

Where–as here–there is no evidence that the chain of custody was in fact assailable, Petitioner is not entitled to habeas relief because he has not shown the prejudice prong of *Strickland. See Knowles v. Bazzle*, No. 2:06-cv-1424-GRA-RSC, 2007 WL 1594412, at *8 (D.S.C. June 1, 2007) ("The record supports Judge Miller's determination that Petitioner failed to demonstrate a problem with the chain of custody, which in turn supports his determination that there was no error by counsel and no prejudice to Petitioner. The state court decision cannot be said to be contrary to clearly established federal law nor that it involved an unreasonable application of clearly established federal law."); *Hill v. Reed*, No. 2:06-cv-0812 MBS, 2006 WL 3354509, at *7 (D.S.C. Nov. 17, 2006) (concluding petitioner was not entitled to relief under § 2254 where trial counsel stipulated to the chain of custody and stating, "[t]he petitioner did not present any evidence at the PCR hearing that there was any defect in the chain of custody . . . .").  This court finds that the Petitioner's trial counsel was not ineffective in failing to object to the chain of custody.  The Petitioner has failed to meet his burden.

### E.     **Ground Five**

In Ground Five of the Petition, Petitioner argues that trial counsel was ineffective in violation of the Petitioner's  rights pursuant to the Sixth and Fourteenth Amendments "where [c]ounsel failed to adequately investigate proper police procedure for conducting an

undercover drug buy and failed to use knowledge of such procedures to adequately challenge the manner in which the drug transaction with which Petitioner was charged was handled and documented." (Dkt. No. 1-1 at 7.)  The Respondent contends Ground Five is barred because it was "not presented to or ruled upon by the state courts in PCR proceedings" and was thus "not 'fairly presented' to the state courts." (Dkt. No. 8 at 21.) In his Memorandum, the Petitioner argues review under *Martinez v. Ryan*, 566 U.S. ___, 132 S. Ct. 1309, 1315 (2012) is appropriate. (Dkt. No. 19 at 23-24.)

     *Martinez* does not assist Petitioner, as the underlying ineffective assistance of counsel claim has no merit. The law regarding procedural default and *Martinez* were discussed *supra.*  The Petitioner asserts eight (8) different arguments that trial counsel was ineffective under Ground Five. (Dkt. Nos. 1-1 at 8-9;  19 at 22.) Each of the arguments asserts that trial counsel was ineffective for not cross-examining the law enforcement witnesses on various aspects of the Petitioner's case. (*Id.*)

     The Fourth Circuit has cautioned against " grading of the quality of counsel's cross-examination."  *Hunt v. Nuth*, 57 F.3d 1327, 1333 (4th Cir. 1995). "[T]actical decisions such as what questions to ask of witnesses are 'virtually unchallengeable.'" *Mosely v. United States*, No. DKC 07–1520, 2011 WL1230888 at *2 (D.Md. March 29, 2011) (quoting *Powell v. Kelly*, 562 F.3d 656, 670 (4th Cir.2009)).  The Petitioner's eight arguments are essentially a laundry list of of questions that he now asserts that trial counsel should have asked.  The Petitioner has not provided any evidence or argument that the failure to ask these question resulted in any prejudice as required by the second prong of *Strickland*.  "Cross-examination is a matter of trial strategy that cannot be second guessed in a collateral habeas proceeding." *Parker v. Clarke*, No. 3:15-CV-242, 2016 WL 165711, at *7 (E.D. Va. Jan. 13, 2016) (citing *Sallie v. North Carolina*, 587 F.2d 636, 640 (4th Cir. 1978); *Johnson v. Riddle*, 222 Va. 428, 433, 281 S.E.2d 843, 846 (1981)).  "Deciding which questions to ask witnesses is also a matter of trial tactics; 'knowing when not to cross-examine an adverse witness is the art of cross-examination at its finest.'" *Id.* (quoting *United States v. Clayborne*, 509 F.2d 473, 479

(D.C. Cir. 1974)).  The Petitioner has failed to meet his burden that his trial counsel was ineffective for not asking particular questions on cross-examination.

## CONCLUSION

It is **RECOMMENDED**, for the foregoing reasons, that Respondent's Motion for Summary Judgment (Dkt. No. 9) be **GRANTED**; and the Petitioner's habeas petition be **DISMISSED WITH PREJUDICE**.

IT IS SO RECOMMENDED.

January 23, 2017

Charleston, South Carolina

MARY GORDON BAKER

UNITED STATES MAGISTRATE JUDGE

**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).