**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Kareem Jabbar Leaphart, | ) | |
| | ) | Civil Action No.: 2:15-cv-04910-JMC |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Warden Willie L. Eagleton, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Kareem Jabbar Leaphart ("Petitioner"), a state prisoner, filed through counsel a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging five numbered grounds for relief. (ECF No. 1.) Respondent, Warden Willie L. Eagleton ("Respondent"), filed a return (ECF No. 8) and a motion for summary judgment on all five of Petitioner's grounds for relief (ECF No. 9).

In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(c) (D.S.C.), the matter was referred to United States Magistrate Judge Mary Gordon Baker for pre-trial handling. On January 23, 2017, the Magistrate Judge issued a Report and Recommendation ("Report") recommending the court grant Respondent's motion for summary judgment and dismiss the Petition with prejudice on all five grounds raised therein. (ECF No. 21.) Petitioner filed objections to the Report (ECF No. 25), which the court now considers. For the reasons that follow, the court **ACCEPTS IN PART** and **REJECTS IN PART** the Magistrate Judge's Report, **GRANTS IN PART** and **DENIES IN PART** Respondent's motion for summary judgment, **DISMISSES** all but a portion of Ground Two of the Petition, and **RECOMMITS** the matter to the Magistrate Judge for further proceedings consistent with this order.

# I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The court concludes, upon its own careful review of the record, that the Magistrate Judge's factual synopsis is accurate and incorporates it herein by reference.[1] The court's recitation of the background will thus focus on the facts pertinent to the analysis of Petitioner's objections, citing to the record only when it is particularly useful to do so. The relevant facts, viewed in a light most favorable to Petitioner, are as follows.

Petitioner was indicted and charged with possession with intent to distribute crack cocaine, possession with intent to distribute cocaine, distribution of crack cocaine, and resisting arrest. A two-day jury trial was held in January 2007, and Petitioner was convicted of the latter two counts and sentenced, in the aggregate, to 23 years in prison.

At trial, George Douglas Curry, a narcotics agent of the Sheriff's Office in Lexington County, South Carolina, testified that the Sheriff's Office had received complaints of drug-related activity in the area of a mobile home park in West Columbia, South Carolina. In response, he and other officers commenced an undercover drug buy in the area on March 15, 2006. Agent Curry testified that the officers went to a bank and withdrew two $20 bills from an account used for undercover operations such as this one and that he issued the two bills to another agent, John Moore. Agent Moore then drove to the mobile home park where he encountered Petitioner. Agent Moore testified that he gave Petitioner $40 of narcotics funds and that Petitioner handed him some crack cocaine[2] (*see* ECF No. 8-1 at 105, 108, 111-12), after which Agent Moore signaled the other

---

[1] In his objections, Petitioner does not contest the accuracy of the Report's factual or procedural recitations. (*See* ECF No. 25 at 1, 5.)

[2] Although a hidden camera in Agent Moore's vehicle recorded the interaction between Petitioner and Agent Moore, the audio associated with video recording was not played for the jury and, viewing the evidence in the record in a light most favorable to Petitioner, the camera was situated so that the video recording did not show whether money, crack cocaine, or other items passed

2

officers involved to effect an arrest.

Agent Curry testified that he drove up on the scene with the blue lights affixed to his vehicle turned on, stopped, and exited the vehicle. He testified that Petitioner "took off between two trailers right on the roadway. And as he did, he took what was in his pocket, threw it on the ground, and continued to run with [other officers] in pursuit." (ECF No. 8-1 at 54.) Agent Curry lost sight of Petitioner, re-entered his vehicle, drove to where he expected to find Petitioner, found Petitioner in a struggle with other officers, and helped effect Petitioner's arrest.

Agent Curry was questioned about the two $20 bills used in the undercover drug buy. Upon testifying that he had issued the two bills to Agent Moore, Agent Curry was shown a photocopy of two $20 bills and asked by the solicitor to "[p]lease tell me what this is if you know." (ECF No. 8-1 at 51; *see id.* at 61 (clarifying that the item shown to Agent Curry was a photocopy of the bills).) Agent Curry responded that "[t]his is a portion of the money that we had taken out of the bank and that was issued to [Agent Moore]. This is the money that was used to make a controlled purchase." (*Id.* at 51.) Later, the solicitor asked Agent Curry, "You said that you picked up the money that [Petitioner] threw. [The photocopy that] has been marked as State's 1, is that the money or some of the money that you picked up?" (*Id.*) Agent Curry responded in the affirmative, and the prosecution moved to admit the photocopy into evidence. (*See id.*) Over Petitioner's trial counsel's objection under the best evidence rule in S.C.R. Evid. 1002 or 1003, the photocopy was admitted into evidence. (*See id.*)

During cross-examination, trial counsel asked Agent Curry how he kept track of the bills so that he knew that the bills he had found were the same bills he had issued to Agent Moore. (*See*

---

between Agent Moore and Petitioner. The only direct evidence that an exchange occurred is Agent Moore's testimony.

*id.* at 62.) Agent Curry responded that "[w]e had this money. This is the money that I had handed to [Agent] Moore a couple of minutes earlier." (*Id.* at 62-63.) When asked whether there were any distinguishing marks on the bills so that they could be identified, Agent Curry responded that there was "[n]othing really . . . It looks like a $20 bill." (*Id.* at 63.) During cross-examination, Agent Curry also clarified that the two bills had been recovered from off the ground and that they had been thrown on the ground by Petitioner. (*See id.* at 63-64.) Agent Curry also testified that the two bills had been re-deposited into the account from which they had been withdrawn. (*See id.* at 62.)

Following the trial, the jury found Petitioner guilty of distribution of crack cocaine, and he was convicted and sentenced as previously explained. Petitioner appealed, arguing that there had been insufficient evidence for a conviction. The South Carolina Court of Appeals dismissed the appeal.

Petitioner filed an application for post-conviction relief ("PCR") in state court. During a hearing in the PCR court, trial counsel testified that his "overall trial strategy" was to emphasize the weakness of any evidence that a money-for-drugs transaction occurred:

> [Agent] Curry testified that [Petitioner] dropped the drugs, but he didn't actually ever say specifically he saw it. And there was that. I tried to harp on the fact that they might not be able to connect it necessarily. There [were] complaints of drug activity. It's not unreasonable to think that—[y]ou know, they found it quite a distance away from him. There was nobody that specifically said they eyeballed him drop it; they just said it was dropped in an area where they thought he dropped it and said that he dropped it, but they didn't say that they actually saw it happen. I pointed that out in my closing argument I believe. Additionally, it was not clear that an actual sale occurred. I tried to address that problem at trial, that there was no audio even though they said they [had an audio recording].

(ECF No. 8-2 at 125-26.) Trial counsel also testified that he had cross-examined Agent Curry regarding what had happened to the two $20 bills after the undercover drug buy and that his questions were "in anticipation of using [Agent Curry's testimony] in closing, [to argue] that [the

officers] were . . . unconcerned as to return the money to the bank." (*Id.* at 130.) Trial counsel was asked whether that line of questioning "was part of [his] strategy with regards to the money used in the control[led] buy." (*Id.*) Trial counsel responded:

> It is my experience—and it was something that I've been taught and I've found to be true throughout my career—it's better to get the information and argue about why it's a bad thing at closing rather than try to argue with the witness. As a trial attorney, I'm a firm believer that you can never win an argument with a witness and, once you've started, you've already lost. So, once you get the information that can allow you to make the argument to the jury, you don't go into it further and tell them that they're wrong or try to berate them for the information you've gotten. You get the information and move on.

(*Id.*)

On cross-examination, Petitioner's PCR counsel questioned trial counsel regarding his understanding of S.C. Code Ann. § 44-53-582 (2016).[3] On redirect examination, trial counsel testified that he did not believe the statute addressed anything regarding the admissibility at trial of monies used by law enforcement during a controlled buy. Later, trial counsel, clarifying an apparent misapprehension of PCR counsel, stated "As to whether . . . , if I had used [§ 44-53-582] . . . and got the bills excluded, it would have made a difference, I can't testify that it wouldn't have made a difference." (ECF No. 8-2 at 144.)

------

[3] The statute provides:

> All monies used by law enforcement officers or agents, in the line of duty, to purchase controlled substances during a criminal investigation must be returned to the state or local agency or unit of government furnishing the monies upon a determination by the court that the monies were used by law enforcement officers or agents, in the line of duty, to purchase controlled substances during a criminal investigation. The court may order a defendant to return the monies to the state or local agency or unit of government at the time of sentencing.

S.C. Code Ann. § 44-53-582.

5

The PCR court denied Petitioner's PCR application and dismissed the petition. The PCR court also denied Petitioner's subsequent motion to reconsider, alter, or amend. Petitioner appealed to the South Carolina Court of Appeals, filing a *Johnson* petition for a writ of certiorari.[4] The Court of Appeals denied the petition for a writ of certiorari and remitted the matter to the court below.

On December 10, 2015, Petitioner filed his § 2254 petition, asserting five grounds for relief. In Ground One, Petitioner asserts trial counsel rendered ineffective assistance by failing to object to the sufficiency of the indictment for distribution of crack cocaine. In Ground Two, Petitioner asserts trial counsel rendered ineffective assistance by failing to object to the admission of the photocopy of the two $20 bills into evidence. In Ground Three, Petitioner asserts that trial counsel rendered ineffective assistance by failing to object to remarks made by the solicitor during opening statements. In Ground Four, Petitioner asserts trial counsel rendered ineffective assistance by failing to object to the admission into evidence of the drugs at issue on chain-of-custody grounds. In Ground Five, Petitioner asserts trial counsel rendered ineffective assistance by failing to adequately investigate proper police procedure for conducting undercover drug buys and by failing to challenge the procedures used by police in the undercover drug buy at issue in this case.

On March 24, 2016, Respondent filed a return and a motion for summary judgment. On January 23, 2017, the Magistrate Judge issued her Report, recommending that the motion for summary judgment be granted with respect to all five grounds for relief and that the petition be dismissed. With regard to Ground Two of the petition, the Report noted that Petitioner advanced five reasons supporting his contention that trial counsel rendered ineffective assistance by failing to object to the admission into evidence of the photocopy of the two bills:

> Petitioner contends that . . . counsel was ineffective (a) in failing to object to
> the State's failure to lay a proper foundation for the introduction of this

---

[4] *See Johnson v. State*, 364 S.E.2d 201 (1988).

evidence; (b) in failing to object to the repeated assertions by Agent Curry that the money in question was the buy money where the record is completely void of any evidence whatsoever that serial numbers, or any other distinguishing features of the money used, were recorded through any method; (c) in failing to object to introduction of the evidence pursuant to Rules 401 and 402 of the South Carolina Rules of Evidence; (d) in failing to argue that introduction of the photographic copy violated . . . [Petitioner's] rights under the Confrontation Clause; (e) failing to object to the money being re-deposited in the bank and a photocopy being substituted for the actual funds in violation of S.C. Code Ann. § 44-53-582.

(ECF No. 21 at 11-12 (internal quotation marks, ellipses, and footnote omitted).)

The Magistrate Judge determined that only the last of these reasons supporting Petitioner's Ground Two assertion was presented to the PCR court, and that, absent an excuse, the four other reasons were procedurally defaulted. (*See id.* at 14-15.) Regarding the last reason, the Magistrate Judge concluded that the PCR court's rejection of Petitioner's argument that trial counsel had rendered ineffective assistance by not objecting to the admission of the photocopy of the two bills based on § 44-53-582 was not contrary to, or an unreasonable application of, clearly established federal law. The Magistrate Judge agreed with the PCR court that the statute had no application to the admissibility of evidence in Petitioner's criminal case. (*See id.* at 15.)

The Magistrate Judge noted that Petitioner argued that PCR counsel had rendered ineffective assistance by failing to raise the four procedurally defaulted reasons for Ground Two relief, which amounted to cause and prejudice to excuse his procedural default under *Martinez v. Ryan*, 556 U.S. 1 (2012). For three of the remaining reasons—all but the reason based on the Confrontation Clause—the Magistrate Judge determined that they should be rejected on the basis that it was trial counsel's strategy to use cross-examination and closing argument to attack the police investigation by, among other things, pointing to the defects in tracking and recording the two $20 bills. (*See id.* at 17-18.) In the Magistrate Judge's estimation, trial counsel's strategic decision in this regard could not amount to constitutionally deficient performance. (*See id.* at 18

(citing *Strickland v. Washington*, 466 U.S. 668, 690 (1984)).) Regarding the Confrontation-Clause-based reason, the Magistrate Judge determined that it was without merit because Agent Curry laid a proper foundation for the admission of the photocopy. (*See id.* at 19.)

With regard to Ground Five, the Magistrate Judge noted that Petitioner asserts eight different instances in which trial counsel is alleged to have been ineffective for not adequately cross-examining the State's witnesses on various aspects of Petitioner's case.[5] (*See id.* at 22-23.) The Magistrate Judge also noted Respondent's argument that Ground Five was procedurally defaulted because none of the reasons for relief asserted under it were presented to the PCR court and noted as well Petitioner's arguments for application of *Martinez*. (*See id.* at 23.) The Magistrate Judge determined that *Martinez* would be of no aid to Petitioner because the underlying claim of ineffective assistance was meritless. (*See id.*) The Magistrate Judge explained that Petitioner presented no argument or evidence demonstrating that he was prejudiced by trial counsel's failure to follow the specific lines of questioning he advanced and that criticism of trial counsel's cross-

---

[5] Specifically, Petitioner asserts that trial counsel rendered ineffective assistance by failing to "question . . . Agent Curry[] concerning what measures he took to document the police buy money," "question Agent Moore concerning whether he had placed crack cocaine from earlier undercover buyers in the same door pocket where he placed the substance he allegedly purchased from Petitioner," "question Agent Moore concerning why he did not attempt to conduct the exchange of drugs for money within the field of vision of the camera equipment designed to record the transaction," "question Agent Curry concerning exactly where he discovered the drugs and money he claimed had been discarded by Petitioner," "specifically challenge [Agent Curry's] claim[s] that he knew the money found on the ground was the same money employed by Agent Moore in a drug transaction with Petitioner" and that "he knew Petitioner had thrown other drugs and the $40 buy money down as he fled the scene when [Agent Curry] did not swear that he physically observed Petitioner throw anything to the ground," "question Agent Moore concerning why he did not secure the drugs he supposedly bought from Petitioner in evidence rather than turn them over to Agent Curry," "question Agent Curry as to why he did not identify the source of the two parcels of crack cocaine in this case separately at the time they were marked at the scene," and "cross examine Agent Curry concerning how he could be certain that the drugs and small amount of money found on the ground were not related to other drug activity at that trailer park unconnected to Petitioner." (ECF No. 1-1 at 8-9.)

examination tactics was not enough to demonstrate that his performance was deficient. (*See id.* at 23-24.)

The Magistrate Judge also recommended granting Respondent's motion for summary judgment as to Grounds One, Three, and Four. In his objections, Petitioner does not challenge the Magistrate Judge's recommendation that the motion for summary judgment as to Grounds One, Three, and Four should be granted. Instead, Petitioner only challenges the Magistrate Judge's recommendation as to Grounds Two and Five.

## II. LEGAL STANDARDS AND APPLICABLE LAW

### A. Summary judgment standard of review

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court reviews *de novo* only those portions of a Magistrate Judge's Report to which specific objections are filed, and reviews those portions which are not objected to—including those portions to which only "general and conclusory" objections have been made—for clear error. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). The court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1).

Summary judgment is appropriate when the materials in the record show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[I]n ruling on a motion for summary judgment, 'the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, ___ U.S. ___, 134 S. Ct. 1861, 1863 (2014) (per curiam) (brackets omitted) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248.

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in its pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *See id.* at 324.

## B. Ineffective assistance of counsel

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The Supreme Court has held that this right is violated when counsel retained by, or appointed to, a criminal defendant fails to provide adequate or effective legal assistance. *See Strickland*, 466 U.S. at 686. For a claim of ineffective assistance of counsel in violation of the Sixth Amendment, *Strickland* established a two-prong test, under which the criminal defendant must show deficient performance and resulting prejudice. *See id.* at 687.

"The performance prong of *Strickland* requires a defendant to show 'that counsel's representation fell below an objective standard of reasonableness.'" *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). "[C]ounsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,'" and courts should indulge in a "'strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Burt v. Titlow*,

___ U.S. ___, 134 S. Ct. 10, 17 (2013) (quoting *Strickland*, 466 U.S. at 689-90). "To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler*, 566 U.S. at 163 (quoting *Strickland*, 466 U.S. at 694).

### C. Section 2254 standard of review

Section 2254, under which the instant petition is brought, "sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). For instance, § 2254 authorizes review of only those applications asserting a prisoner is in custody in violation of the Constitution or federal law and only when, except in certain circumstances, the prisoner has exhausted remedies provided by the state. *See id.*

When a § 2254 petition includes a claim that has been adjudicated on the merits in a state court proceeding, § 2254 provides that the application shall not be granted with respect to that claim, unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Pinholster*, 563 U.S. at 181 (internal citations omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The standard of review for an ineffective assistance claim under *Strickland* in the first instance is already "a most deferential one," and "'[s]urmounting *Strickland*'s high bar is never an

easy task.'" *Richter*, 562 U.S. at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). Consequently, "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult[, as t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* (internal citations omitted) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Strickland*, 466 U.S. at 689). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable . . . [but] whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

## D. Procedural default

A petitioner's failure to raise in state court a claim asserted in his § 2254 petition "implicates the requirements in habeas of exhaustion and procedural default. *Gray v. Netherland*, 518 U.S. 152, 161 (1996). "The habeas statute generally requires a state prisoner to exhaust state remedies before filing a habeas petition in federal court." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Thus, "[a] state prisoner is generally barred from obtaining federal habeas relief unless the prisoner has properly presented his or her claims through one 'complete round of the State's established appellate review process.'" *Id.* (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999)). In a similar vein, "a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance" and has procedurally defaulted those claims, *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). Absent an exception, a federal court will not entertain a procedurally defaulted claim, so long as the state procedural requirement barring the state court's review is adequate to support the judgment and independent of federal law. *See Martinez*, 566 U.S. at 9-10; *Walker v. Martin*, 562 U.S. 307, 315-16 (2011). "Thus, if state-court remedies are no longer available

12

because the prisoner failed to comply with the deadline for seeking state-court review or for taking an appeal, those remedies are technically exhausted, but exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding." *Woodford*, 548 U.S. at 93 (internal citation omitted) (citing *Gray*, 518 U.S. at 161-62; *Coleman*, 501 U.S. at 744-51).

However, "[t]he doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." *Martinez*, 566 U.S. at 10 (citing *Coleman*, 501 U.S. at 750). "In *Coleman*, . . . the Supreme Court held that . . . a federal habeas 'petitioner cannot claim constitutionally ineffective assistance of counsel in [state post-conviction] proceedings' to establish cause." *Fowler v. Joyner*, 753 F.3d 446, 460 (4th Cir. 2014) (quoting *Coleman*, 501 U.S. at 752). Subsequently, in *Martinez*, the Supreme Court recognized a "narrow exception" to the rule stated in *Coleman* and held that, in certain situations, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 566 U.S. at 9. The Fourth Circuit has summarized the exception recognized in *Martinez*:

> a federal habeas petitioner who seeks to raise an otherwise procedurally defaulted claim of ineffective-assistance-of-trial-counsel before the federal court may do so only if: (1) the ineffective-assistance-of-trial-counsel claim is a substantial one; (2) the "cause" for default "consists of there being no counsel or only ineffective counsel during the state collateral review proceeding"; (3) "the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim"; and (4) state law "requires that an ineffective-assistance-of-trial-counsel claim be raised in an initial-review collateral proceeding."

*Fowler*, 753 F.3d at 461 (internal brackets omitted) (quoting *Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911, 1918 (2013)).

### III. ANALYSIS

With the above standards of review and applicable law in mind, the court considers the Magistrate Judge's Report and Petitioner's objections thereto. With one exception discussed below, the court agrees that Respondent is entitled to summary judgment on the grounds for relief asserted in Petitioner's § 2254 petition.

### A. Ground Two

Petitioner does not object to the Magistrate Judge's determination that all but the last of the five reasons undergirding Ground Two are procedurally defaulted, and the court perceives no clear error in that determination. *See Diamond*, 416 F.3d at 315. Regarding the lone reason under Ground Two that was not procedurally defaulted—that trial counsel rendered ineffective assistance by failing to object to the admissibility of the photocopy of the two $20 bills on the basis of § 44-53-582—the Magistrate Judge noted the PCR court's conclusion that "this statute is not relevant to the admissibility of the money used in a control[led] buy." (ECF No. 8-3 at 26.) This court has no authority to review the PCR court's conclusion that monies used in a controlled buy cannot be deemed inadmissible under § 44-53-582, as "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Because the PCR court's determination as to South Carolina law inexorably leads to the conclusion that an objection to the admissibility of the photocopy on the basis of § 44-53-582 would have been meritless, the PCR court's determination that trial counsel did not render ineffective assistance by failing to object to its admissibility on that basis was not an unreasonable application of *Strickland*. *See Smith v. Padula*, 444 F. Supp. 2d 531, 539 (D.S.C. 2006) ("[T]rial

14

counsel cannot be ineffective for failing to make a meritless futile objection."); *Moore v. United States*, 934 F. Supp. 724, 731 (E.D. Va. 1996) ("[T]here can be no claim of ineffective assistance where . . . counsel is alleged to have failed to raise a meritless argument. Failure to raise a meritless argument can never amount to ineffective assistance.") Petitioner's objections to the Report in this regard are unavailing and thus overruled.

Regarding Petitioner's fourth reason supporting Ground Two—that trial counsel rendered ineffective assistance by failing to object to the admission of the photocopy on the ground that it violated Petitioner's Confrontation Clause rights—the Magistrate Judge determined that it was without merit because Agent Curry adequately laid a foundation for the photocopy's authenticity. (*See* ECF No. 21 at 19.) Petitioner objects to the determination that Agent Curry's testimony was sufficient. (*See* ECF No. 25 at 13.) The court declines to adopt the reasoning set forth in the Report, but accepts its recommendation on other grounds. Absent some sworn certification or statement as to their authenticity or reliability, the admission of photographs or photocopies into evidence does not implicate a criminal defendant's rights under the Confrontation Clause. *See United States v. Brooks*, 772 F.3d 1161, 1167 (9th Cir. 2014) ("The photographs of the seized parcel were not 'witnesses' against [the defendant]. They did not 'bear testimony' by declaring or affirming anything with a 'purpose.' Therefore, their admission did not violate the Confrontation Clause." (quoting *Washington v. Crawford*, 541 U.S. 36, 51 (2004))); *United States v. Lopez-Moreno*, 420 F.3d 420, 436 ("While the Supreme Court chose in *Crawford* not to define precisely what is and is not a testimonial statement, it is clear that the photocopy of the identification card does not qualify as such because it in no way involves a witness bearing testimony."). Therefore, trial counsel's objection to the admission of the photocopy based on the Confrontation Clause would have been meritless, and trial counsel cannot be deemed to have rendered ineffective assistance by

failing to raise a meritless objection. *See Padula*, 444 F. Supp. 2d at 539; *Moore*, 934 F. Supp. at 731. Moreover, for this reason, Petitioner cannot meet *Martinez*' cause and prejudice requirements. *See Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012) ("[A] PCR counsel would not be ineffective for failure to raise an ineffective assistance of counsel claim with respect to trial counsel who was not constitutionally ineffective."). Petitioner's objections, which address whether Agent Curry's testimony was sufficient to lay a foundation, are overruled.

Regarding Petitioner's three remaining reasons supporting Ground Two—that trial counsel rendered ineffective assistance by failing to object to the photocopy's admission based on the State's failure to lay a proper foundation for its introduction, by failing to object to its admission on grounds of irrelevance under S.C.R. Evid. 401 and 402, and by failing to object to Agent Curry's testimony that the photocopy was of the money used in the undercover drug buy—the Magistrate Judge determined that trial counsel's decisions to not object on these bases were strategic choices and thus could not amount to deficient performance under *Strickland*. (*See* ECF No. 21 at 17-18.) In his objections, Petitioner challenges this determination. (ECF No. 25 at 9-12.)

The court agrees with the Magistrate Judge that, if trial counsel pursued a strategy of permitting challengeable evidence to be admitted in an attempt to highlight allegedly shoddy or underhanded police work, Petitioner would be unable to meet *Strickland*'s deficient performance prong. *See Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."). However, as *Strickland* itself strongly indicated, a trial counsel's strategic choices might not insulate him from being deemed to have performed deficiently if his choice is not sufficiently informed and considered. *See Mirzayance*, 556 U.S. at 125-26 (applying *Strickland*); *Pavel v. Hollins*, 261 F.3d 210, 218 (2d Cir. 2001) ("[A]lthough [counsel]'s decision was 'strategic' in *some* senses of the word, it was not

the sort of conscious, reasonably informed decision made by an attorney with an eye to benefitting his client that the federal courts have denominated 'strategic' and been especially reluctant to disturb."); *id.* at 218 n.11 (collecting cases for the propositions that "strategic decisions" must be "conscious" and "reasonably informed"); *see also Lockett v. Anderson*, 230 F.3d 695, 714 (5th Cir. 2000) ("*Strickland* . . . demands more than the mere decision of a strategic choice by counsel. It requires informed strategic choices." (internal quotation marks omitted)), *cited with approval in Skipper v. Lee*, 238 F.3d 414, at *9 (4th Cir. 2000) (argued but unpublished).

Here, the Magistrate Judge stated that the record supported the conclusion that trial counsel was pursuing a strategy to attack the police investigation. As a general matter, this is an accurate description of the record: trial counsel's lines of cross-examination and closing argument attest to this strategy, and he testified to the same effect at the PCR hearing. However, the more specific question—whether trial counsel made an informed, strategic decision to forego challenges to the photocopy's admissibility in favor of using the photocopy and testimony relating to it in efforts to attack the police investigation—is not so clear-cut. Although the trial record evinces trial counsel's general strategy, it does not disclose whether he made an informed, strategic decision to permit, rather than object to, the admission of the photocopy. If anything, the trial record suggests that, faced with such a choice, trial counsel would have opted to exclude the photocopy, as he objected to its admission under the best evidence rule.

Trial counsel's testimony at the PCR hearing likewise does not clearly show that he strategically chose to allow the photocopy to be admitted. He did testify that he strategically decided to not argue with Agent Curry regarding whether Agent Curry's re-depositing the two $20 bills in the account was the procedurally correct action, because, in his estimation, it was better to make that point to the jury rather than argue it with Agent Curry. (*See* ECF No. 8-2 at 130.) This

testimony is of little use here, as trial counsel described the choice to be made as whether or not to argue with a witness regarding already-admitted evidence and did not mention any choice regarding whether or not to challenge the admissibility of that evidence in the first place. More relevant here is trial counsel's testimony that, if he had successfully prevented the photocopy's admission under § 44-53-582, he could not say that such a result would not have affected the trial's outcome. (*See id.* at 144.) This testimony suggests that, had the choice been squarely presented, trial counsel would have opted to exclude the photocopy, for, absent some indication that trial counsel believed admission of the photocopy would prove even more advantageous, the court should not presume that trial counsel would forego an advantage that he believed would favorably affect the trial's outcome. In other words, when reasonable inferences are drawn in Petitioner's favor, the only evidence on the issue in the record supports the conclusion that trial counsel did not make a strategic decision (as that term is understood for purposes of an ineffective assistance claim) to permit the admission of the photocopy. Instead, his strategy was to exclude the photocopy.

Because the only evidence on the issue in the record strongly indicates that trial counsel would have chosen to have the photocopy excluded rather than admitted, the court cannot agree that there is no genuine dispute that trial counsel made a strategic decision to permit the admission of the photocopy in an effort to attack the police investigation. Thus, the court is compelled to reject the Magistrate Judge's rationale for recommending that summary judgment be granted to Respondent on the three remaining reasons underlying Ground Two. Although, in the context of deciding an ineffective assistance claim in a § 2254 petition, there is a strong presumption that trial counsel's performance fell within the wide range of reasonable professional performance, *Strickland*, 466 U.S. at 689, the Magistrate Judge did not determine whether, absent the conclusion

18

that the failure to object to the photocopy's admission was indisputably a conscious strategy, there is sufficient evidence on record to overcome that presumption. Moreover, the evidence the court has summarized in the two preceding paragraphs, in the absence of other evidence on the issue, appears sufficient to overcome the presumption. *See id.* ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must *overcome the presumption that*, under the circumstances, *the challenged action might be considered sound trial strategy*." (internal quotation marks omitted) (emphasis added)); *id.* at 690 ("A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.").

For one of Petitioner's three remaining reasons supporting Ground Two, the court's rejection of the Magistrate Judge's rationale does not warrant rejecting the Magistrate Judge's ultimate recommendation. Regarding Petitioner's third reason supporting Ground Two—that trial counsel rendered ineffective assistance by failing to object to the photocopy's admission on the basis that the photocopy was irrelevant under Rules 401[6] and 402[7]—the court concludes that an objection on this basis would have been meritless. Assuming the photocopy is what its proponent claimed it to be—a photocopy of two $20 bills that were withdrawn from an account used to

---

[6] "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." S.C.R. Evid. 401.

[7] "All relevant evidence is admissible, except as otherwise provided by [law]. Evidence which is not relevant is not admissible." S.C.R. Evid. 402.

provide cash for undercover drug buys, issued by Agent Curry to Agent Moore, and recovered by Agent Curry near where the undercover drug buy occurred (*see* ECF No. 8-1 at 50-51, 55)—the photocopy is relevant because it tends to make the occurrence of a money-for-drugs transaction more probable than if the photocopy were not in existence. Evidence of the very existence of the bills makes it more likely that they were withdrawn from the account, that they were issued to Agent Moore, that they were present during Agent Moore's interaction with Petitioner, that they were exchanged for drugs, that they were thrown to the ground, and that they were later recovered from the ground by Agent Curry. Moreover, evidence of the bills' existent corroborates the testimony of Agent Curry and Agent Moore, which makes their testimony that a money-for-drugs transaction occurred more likely.

In order to conclude that the photocopy of the bills is irrelevant, the court would first have to conclude that the photocopy is not what its proponent claims it is, i.e. that it is not a photocopy of bills used in the undercover drug buy but, instead, a photocopy of two bills unrelated to the events underlying Petitioner's conviction for distribution of crack cocaine. If the court concluded that the State had failed to demonstrate that the photocopy was of two bills actually issued to Agent Moore and used in the undercover drug buy, then the photocopy would be irrelevant, as the existence of two $20 bills unrelated to the events at issue would not tend to make the existence of a fact of consequence in the criminal case against Petitioner more or less likely. However, this argument that the photocopy is irrelevant hinges on a determination that the State failed to sufficiently demonstrate that the photocopy is what the State claimed it to be. Petitioner himself appears to recognize that a prerequisite to finding the photocopy irrelevant is a determination that the photocopy is not what the State claimed it to be. (*See* ECF No. 25 at 12 ("Trial Counsel clearly should have argued that the evidence depicted in [the photocopy] was not relevant to the charges

before the Court where the State had not produced competent evidence connecting that evidence to Petitioner.").) However, such a determination would render the photocopy inadmissible because it was not properly authenticated. *See* S.C.R. Evid. 901(a) ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."). After a determination that the photocopy was inadmissible under Rule 901(a), a subsequent objection based on the photocopy's irrelevance under Rules 401 and 402 would have been unnecessary and likely denied as moot.

In short, trial counsel's objection to the admission of the photocopy solely on the basis of its irrelevance under Rules 401 and 402 would have been meritless, and, thus, his failure to raise such an objection cannot amount to ineffective assistance. *See Padula*, 444 F. Supp. 2d at 539; *Moore*, 934 F. Supp. at 731. For this reason, Petitioner cannot demonstrate the cause and prejudice needed under *Martinez* for the court to entertain this procedurally defaulted ineffective assistance claim. *See Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012). Petitioner's objections in regard to the third reason underlying Ground Two are overruled.

Regarding Petitioner's first and second reasons supporting Ground Two—that trial counsel rendered ineffective assistance by failing to object to the photocopy's admission on the basis that the State failed to lay a proper foundation for its admission and by failing to object to Agent Curry's testimony that the photocopy depicted two bills used in the undercover drug buy—the court concludes that it cannot agree with the Magistrate Judge's ultimate recommendation based on the record before it. Having concluded that the record does not demonstrate that trial counsel's actions in this regard were the result of an informed strategic decision, the court is left to determine whether Petitioner has asserted a substantial claim of ineffective assistance of trial counsel and

whether PCR counsel's failure to raise these arguments in the PCR proceedings amounts to cause and prejudice for Petitioner's procedural default of the arguments.

Unlike Petitioner's three other reasons supporting Ground Two, the court cannot conclude on the record before it that the two remaining reasons are meritless. In its consideration of the three reasons above, the court was able to determine that the objections Petitioner asserts trial counsel should have made would have been overruled, and, thus, trial counsel's failure to make the objections did not amount to deficient performance, did not prejudice Petitioner, and could not support an assertion of cause and prejudice under *Martinez*. For the remaining two reasons, the same analysis does not apply. The first reason—that trial counsel was ineffective for failing to object to the photocopy's admission based on the State's failure to lay a proper foundation—appears to be premised on S.C.R. Evid. 901(a). The second reason—that trial counsel was ineffective for failing to object to Agent Curry's testimony—appears to be premised on S.C.R. Evid. 602. The court is aware of no authority standing for the proposition that an objection to the photocopy based on Rule 901(a) or an objection to Agent Curry's testimony based on Rule 602 would have been overruled. Thus, the court cannot conclude on the record before it that the two remaining reasons supporting Ground Two are meritless, such that Petitioner would be unable to demonstrate deficient performance and resulting prejudice.

Rather than continuing to assess them in this order, the court believes it is in the interest of expeditious adjudication to deny Respondent's summary judgment motion with respect to these two reasons under Ground Two at this point. *See Robinson v. McFadden*, No. 5:15-cv-04718-JMC, 2016 WL 5661694, at *4 (D.S.C. Sept. 30, 2016). The court notes that, because the Magistrate Judge's analysis with respect to these two reasons addressed only whether trial counsel's performance was the result of a strategic decision, the Report did not address whether trial

counsel's performance was otherwise deficient, whether, if so, prejudice resulted from his failure to raise the objections to which Petitioner points, whether, if so, these defaulted claims of ineffective assistance are substantial, and whether, if so, PCR counsel's failure to assert the defaulted claims amounts to cause and prejudice under *Martinez*. The court also notes that the parties' arguments with respect to these two reasons under Ground Two are somewhat cursory and provide little authority to guide judicial analysis. *See id.* Denying summary judgment without prejudice at this point will allow Respondent to refile his motion and will allow the parties to present more fully developed arguments on the issues. *See id.*

**B. Ground Five**

In Ground Five, Petitioner points to eight different instances in which he alleges trial counsel rendered ineffective assistance by not adequately cross-examining the State's witnesses. The Magistrate Judge recommended granting summary judgment to Respondent on Ground Five for two reasons. First, the Magistrate Judge explained that Petitioner had failed to present any evidence or argument that he was prejudiced by trial counsel's allegedly inadequate cross-examinations. Despite submitting six pages of objections with respect to Ground Five, Petitioner does not challenge the Report on this point, and the court is hard-pressed to discern any argument in Petitioner's objections or in his other filings that the result of the criminal prosecution would have been different had trial counsel questioned the State's witnesses in the manner described in Ground Five. For this reason alone, the court would accept the Magistrate Judge's recommendation to grant summary judgment as to this ground for relief

Second, the Magistrate Judge explained that Ground Five merely contained a laundry list of questions that Petitioner asserts trial counsel should have asked the State's witnesses and that formulating the questions to ask witnesses at trial is a quintessential tactical decision that is nearly

unassailable under habeas review. *See Hunt v. Nuth*, 57 F.3d 1327, 1333 (4th Cir. 1995) (disfavoring "criticisms [that] . . . constitute a grading of the quality of counsel's cross-examination" (internal quotation marks omitted)); *Mosley v. United States*, Nos. DKC 07-1520; DKC 03-0194, 2011 WL 1230888, at *2 (D. Md. March 29, 2011) ("[T]actical decisions such as what questions to ask of witnesses are virtually unchallengeable." (internal quotation marks omitted)); *id.* (collecting cases).

In his objections, Petitioner contends that, although the Magistrate Judge is correct that trial counsel's choice of questions for witnesses is a matter of strategy that normally is not a basis for an ineffective assistance claim, his trial was out of the ordinary because trial counsel's questions failed to "demonstrate[] the degree to which the execution of this [undercover drug buy] was sloppy and the testimony concerning it unreliable." (ECF No. 25 at 18.) The court concludes that this objection is belied by the record. As the court explained above, trial counsel's strategy was to attack the police investigation as shoddy or underhanded, and this strategy is manifested not only from the face of the trial court record, which shows trial counsel's cross-examination and closing arguments were focused solely on this point, but also trial counsel's testimony at the PCR hearing. Moreover, in questioning witnesses and making his closing argument, trial counsel attempted to bring out many of the issues on Petitioner's laundry list. (*See* ECF No. 8-1 at 61-62 (asking Agent Curry "[w]hat happened to the actual bills" and "what [were] the procedure[s]" to "keep track" of the bills and to "identify that specific money"); *id.* at 71-73 (eliciting from Agent Curry that he had not labeled the two parcels of drugs so as to identify their respective sources); *id.* at 110, 112-13 (eliciting from Agent Moore that he had been engaged in undercover buys earlier that day and that he usually places drugs in door pocket and asking whether any officer had searched his vehicle before commencing undercover buy at issue and whether the vehicle was the

same vehicle used in earlier undercover drug buys); *id.* at 113-14 (asking whether video is accurate depiction of the undercover drug buy); *id.* at 181 (arguing that Agent Curry had testified that police "did nothing to record the money in this case"); *id.* at 184 (rhetorically asking jury why video did not depict Agent Moore's or Petitioner's hands); *id.* at 185 (arguing that Agent Curry never testified that he saw Petitioner throw anything); *id.* at 186-87 (pointing out that Agent Moore could have placed drugs obtained during previous undercover buys in door pocket and neglected to remove them).) Accordingly, the court overrules the objection and agrees with the Magistrate Judge that Respondent is entitled to summary judgment on Ground Five because Petitioner has failed to demonstrate that trial counsel's performance was deficient.

**C. Grounds One, Three, and Four**

The Magistrate Judge assessed Grounds One, Three, and Four of the petition, and her Report recommends that the court grant Respondent summary judgment on these grounds for relief. Petitioner has not objected to the Report in this regard, and the court perceives no clear error in the Magistrate Judge's assessment or recommendation as to these three grounds for relief. *See Diamond*, 416 F.3d at 315. Accordingly, the court concludes that summary judgment is appropriate for Grounds One, Three, and Four.

## IV. CONCLUSION

Upon careful consideration of the entire record, the court **ACCEPTS IN PART** and **REJECTS IN PART** the Magistrate Judge's Report and Recommendation (ECF No. 21). Respondent's Motion for Summary Judgment (ECF No. 9) is **GRANTED IN PART** with respect to Grounds One and Three through Five and with respect to the third, fourth, and fifth reasons supporting Ground Two and **DENIED IN PART WITHOUT PREJUDICE** with respect to the first and second reasons supporting Ground Two. Grounds One and Three through Five and the

third, fourth, and fifth reasons supporting Ground Two (ECF No. 1) are **DISMISSED WITH PREJUDICE**. This matter is **RECOMMITTED** to the Magistrate Judge for consideration of any further motions and briefings in accordance with this order.

### Certificate of Appealability

The law governing certificates of appealability provides that:

(c)(2) A certificate of appealability may issue… only if the applicant has made a substantial showing of the denial of a constitutional right.
(c)(3) The certificate of appealability… shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met.

**IT IS SO ORDERED**.

J. Michelle Childs

United States District Court Judge

March 29, 2017
Columbia, South Carolina