# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Kareem Jabbar Leaphart, | Civil Action No.: 2:15-cv-04910-JMC |
| Petitioner, | |
| v. | |
| Warden Willie L. Eagleton, | **ORDER AND OPINION** |
| Respondent. | |

Petitioner Kareem Jabbar Leaphart seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to Respondent Warden Willie L. Eagleton's renewed Motion for Summary Judgment (ECF No. 35) as to the remaining portions of Ground Two of Petitioner's habeas petition. As set forth below, the court **GRANTS** Respondent's renewed Motion for Summary Judgment (*id.*) and **ACCEPTS** the Magistrate Judge's Report and Recommendation ("Report") (ECF No. 37).

## I. RELEVANT FACTUAL BACKGROUND

The court begins with a brief review of the evidence presented at Petitioner's trial. Douglas Curry ("Curry"), a narcotics agent employed by the Sheriff's Office in Lexington, South Carolina, testified that the Sheriff's Office had received several complaints from citizens living in a mobile home park in West Columbia that they believed drug activity was going on in the area. (ECF No. 8-1 at 48-49.) Curry testified that, as a result of these complaints, on March 15, 2006, he and other members of his team decided to "go out there and make an undercover sting." (*Id.* at 50.) Curry stated that they "use[d] an undercover officer in an undercover car, and [they] went] out [to] see if [they had] any takers on [their] undercover sting." (*Id.*) According to Curry,

1

the police "went to the bank, took some money out of [their] narc[otics] account," and "issued it" to John Moore ("Moore"), an employee of the Lexington County Sheriff's Office assigned to the narcotics unit, to make the undercover buys. (*Id*. at 50-51.) Curry testified that they issued the money to Moore, and the other officers stayed on the perimeter "like a holding pattern." (*Id*. at 51.) Curry stated that Moore's vehicle was fitted with a monitoring device so that police could hear what was going on in the vehicle. (*Id*. at 50.) Curry testified that Petitioner approached Moore's vehicle and "told [Moore] to cut the block." (*Id*. at 52-53.) According to Curry, Moore drove around the block and came back to Petitioner; when the drug deal was complete, Moore "told [them] to go ahead and affect an arrest." (*Id*. at 53.) When the other officers "rolled up," Petitioner took off running. (*Id*.) Curry stated, "[Petitioner] took off between two trailers right on the roadway. And as he did, he took what was in his pocket, threw it down on the ground, and continued to run with Agents Gleaton and Strange in pursuit." (*Id*. at 53-54.)

Curry identified State's Exhibit 1 as "the money or some of the money" that Petitioner threw and Curry picked up; the exhibit was admitted over counsel's objection under South Carolina Rules of Evidence 1002 and 1003. (*Id*. at 57.) As to State's Exhibit 2, Curry testified that the contents of that were "the one piece of crack cocaine that we originally purchased from [Petitioner], along with a baggie that contained several other pieces and a small baggie of powder cocaine;" according to Curry, "[t]his is what [Curry] recovered on the way back to [his] truck that [Petitioner] had thrown down when he took off running." (*Id*. at 56.) Curry clarified that Exhibit 2-B was the crack that Moore purchased from Petitioner; Exhibit 2-C "is the baggie that contained crack cocaine that [Petitioner] threw down, along with the $20 that he had gotten from John Moore when [officers] began chasing [Petitioner];" and Exhibit 2-A was the cocaine powder that was in the baggie. (*Id*. at 77.)

2

Moore testified that on the day in question, he went undercover at the trailer park, "rid[ing] through it and see[ing] if anybody would sell [drugs] to [him]." (*Id*. at 102-03.) He testified that State's Exhibit 3 was a videotape of the transaction as it occurred that day; it was admitted into evidence without objection. (*Id*. at 103-04.) Moore testified that he pulled into the parking lot, and Petitioner approached Moore, asking him what he needed. (*Id*. at 105.) According to Moore, after some conversation, including Petitioner asking to see Moore's "stem" (or "the tool or pipe that you use to smoke the crack with"), Petitioner asked Moore to "cut around the block." (*Id*. at 105-07.) Moore testified that he cut the block, came back up to Petitioner, received the crack from Petitioner, and gave Petitioner the $40. (*Id*. at 107-08.) Moore testified that he gave Petitioner "$40 of narcotics funds, and [Petitioner] handed [Moore] some crack cocaine." (*Id*. at 105-109.) Moore identified State's Exhibit 2-B as the crack he received from Petitioner and gave to Agent Curry. (*Id*. at 109.)

Emily Homer, a chemist employed by the Lexington County Sheriff's Department, testified that State's Exhibit 2-A was .47 grams of cocaine hydrocholoride; State's Exhibit 2-B was .35 grams of cocaine base (also known as crack); and State's Exhibit 2-C was .94 grams of cocaine base. (*Id*. at 134, 137-8.) State's Exhibit Numbers 2-A, 2-B, and 2-C were admitted during Ms. Homer's testimony. (*Id*. at 139-40.)

The jury convicted Petitioner of distribution of crack cocaine and resisting arrest. (ECF No. 8-2 at 13.) Petitioner was found not guilty of possession with intent to distribute crack cocaine and possession with intent to distribute cocaine. (*Id*.)

## II.     RELEVANT PROCEDURAL BACKGROUND

Petitioner filed his habeas petition on December 10, 2015. (ECF No. 1.) On March 24, 2016, Respondent filed a Motion for Summary Judgment. (ECF No. 9.) On June 30, 2016

3

Petitioner filed a response in opposition to the Motion for Summary Judgment (ECF No. 19), to which Respondent filed a reply (ECF No. 20). On January 23, 2017, Magistrate Judge Mary Gordon Baker filed a Report, recommending that Respondent's Motion for Summary Judgment (ECF No. 9) be granted and Petitioner's habeas petition be dismissed with prejudice. (ECF No. 21.) In an Order dated March 29, 2017, the court granted in part and denied in part Respondent's Motion for Summary Judgment. (ECF No. 28.) Specifically, summary judgment was granted to Respondent as to all grounds in the petition except to a portion of Ground two, namely the following claims of ineffective assistance of counsel:

(a) failing to object to the State's failure to lay a proper foundation for the introduction of the photocopy of currency that the State contended was part of the drug buy,[1] and

(b) failing to object to the repeated assertions by Agent Curry that the money in question was the buy money where the record is completely void of any evidence whatsoever that serial numbers, or any other distinguishing features of the money used, were recorded through any method.[2]

(*Id*. at 6-7, 21-23.) The court stated in its Order, *inter alia*:

> The court notes that, because the Magistrate Judge's analysis with respect to these two reasons addressed only whether trial counsel's performance was the result of a strategic decision, the Report did not address whether trial counsel's performance was otherwise deficient, whether, if so, prejudice resulted from his failure to raise the objections to which Petitioner points, whether, if so, these defaulted claims of ineffective assistance are substantial, and whether, if so, PCR counsel's failure to assert the defaulted claims amounts to cause and prejudice under *Martinez*. The court also notes that the parties' arguments with respect to these two reasons under Ground Two are somewhat cursory and provide little authority to guide judicial analysis.

---

[1] South Carolina Rule of Evidence 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

[2] South Carolina Rule of Evidence 602 provides that:
> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of this matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony. This rule is subject to the provisions of Rule 703, relating to opinion testimony by expert witnesses.

> Denying summary judgment without prejudice at this point will allow Respondent to refile his motion and will allow the parties to present more fully developed arguments on the issues.

(*Id*. at 23.) Accordingly, the court recommitted the remaining two claims of ineffective assistance to the Magistrate Judge for further consideration. (*Id*. at 26.) Thereafter, the Magistrate Judge ordered the parties to file any additional motions in the case on or before May 5, 2017. (ECF No. 30.)

On May 5, 2017, Respondent filed a renewed Motion for Summary Judgment asserting three arguments. (ECF No. 35.) First, Respondent states that because Agent Curry's testimony clearly demonstrates that the photocopy was of two bills that the team obtained from the bank, that they were actually issued to Agent Moore and that they were used in the undercover drug buy, an objection based upon the States' supposed failure to establish a proper foundation of the admission of the currency under South Carolina Rule of Evidence 901 would have been meritless. (*Id*. at 15-16.) Second, Respondent posits that Agent Curry's testimony was not based upon opinions drawn by him. (*Id*. at 19.) Instead, "Agent Curry's testimony that the photocopies were of the "buy money" was strictly based on matters within his personal knowledge: he was involved in obtaining the money from the bank that was subsequently used in the undercover buy; he gave the money to Agent Moore, and he was able to identify the money that he picked up from the ground in the area where Petitioner had dropped it as the money used in the transaction. He could also testify that the photocopy was of the same money." (*Id*.) Lastly, Respondent concludes that neither piece of evidence, although both relevant and probative, was necessary to successfully prosecute Petitioner for distribution of crack cocaine. (*Id*. at 24-25.) Consequently, Respondent proclaims that Petitioner cannot prove that he was prejudiced by trial counsel's inactions. (*Id*.)

On May 15, 2017, Petitioner filed a reply, asserting that "the evidence in fact refutes any claim that Agent Curry saw the evidence in question thrown to the ground. Agent Curry not only does not say he saw Petitioner throw this evidence to the ground, he does not even claim he went to the spot where he saw Petitioner discard the baggie, but rather stated that he "recovered it" on his way back to this vehicle." (ECF No. 36 at 4-5.) Petitioner espouses that evidence of the bills' existence corroborates the testimony of Agent Curry and Agent Moore, which makes their testimony that a money-for-drugs transaction occurred more likely, highlighting the precise reasons why the introduction of this evidence is highly prejudicial to his case. (*Id*. at 5-6.)

On January 31, 2018, the Magistrate Judge filed a second Report, recommending that Respondent's Renewed Motion for Summary Judgment be granted and that Petitioner's habeas petition be dismissed with prejudice. (ECF No. 37.) The parties were advised of their right to file objections to the Report. (ECF No. 37 at 13.) On March 16, 2018, Petitioner filed an objection to the Report. (ECF No. 42.) Petitioner maintained that it is impossible to know to what degree Petitioner's jury was unduly influenced by State's Exhibit No. 1 and Curry's claims that he knew it depicted money thrown to the ground by Petitioner and that the bills in question were the same bills given to Agent Moore and used in a buy from Petitioner. (ECF No. 42 at 5.) Accordingly, Petitioner claims this evidence improperly bolstered the testimony of undercover Agent Moore, thereby prejudicing his case. (*Id*.)

### III. LEGAL STANDARD

**A. The Magistrate Judge's Report and Recommendation**

The Magistrate Judge's Report and Recommendation is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(c) for the District of South Carolina. The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive

weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

**B. Summary Judgment Standard**

Summary judgment is appropriate when the materials in the record show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[I]n ruling on a motion for summary judgment, 'the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (per curiam)(brackets omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the nonmoving party, to survive the motion for summary judgment, may not rest on the allegations averred in its pleadings. Rather, the nonmoving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *See id.* at 324.

**C. Section 2254 Standard**

Because Petitioner filed the petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), his claims are governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997). Section 2254 "sets several limits on the power

7

of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). For instance, § 2254 authorizes review of only those applications asserting a prisoner is in custody in violation of the Constitution or federal law and only when, except in certain circumstances, the prisoner has exhausted remedies provided by the state. *Id.*

When a § 2254 petition includes a claim that has been adjudicated on the merits in a state court proceeding, § 2254 provides that the application shall not be granted with respect to that claim, unless the state court's adjudication of the claim:

a. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
b. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Pinholster*, 563 U.S. at 181 (internal citations omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

**D. Ineffective Assistance of Counsel**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The Supreme Court has held that this right is violated when counsel retained by, or appointed to, a criminal defendant fails to provide adequate or effective legal assistance. *See Strickland* v. Washington, 466 U.S. 668, 686 (1984). *Strickland* established a two-prong test for a claim of ineffective assistance of counsel in violation of the Sixth Amendment, under which the criminal defendant must show deficient performance and resulting prejudice. *Id.* at 687.

"The performance prong of *Strickland* requires a defendant to show 'that counsel's representation fell below an objective standard of reasonableness.'" *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). "[C]ounsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,'" and courts should indulge in a "'strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (quoting *Strickland*, 466 U.S. at 689-90). "To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler*, 566 U.S. at 163 (quoting *Strickland*, 466 U.S. at 694).

The standard for an ineffective assistance claim under *Strickland* in the first instance is already "a most deferential one," and "'[s]urmounting *Strickland*'s high bar is never an easy task.'" *Richter*, 562 U.S. at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). Consequently, "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult, as the standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id*. (internal citations omitted) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *Lindh*, 521 U.S. at 333, n. 7 (1997); *Strickland*, 466 U.S. at 689). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable... [but] whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 89.

## IV.    ANALYSIS

As explained in *Harrington v. Richter*, 562 U.S. 86 (2011),

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine

9

confidence in the outcome." *Id*. at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.

Petitioner points to the counsel's testimony at his PCR hearing to support his assertion of prejudice:

> Q. And you say that you don't think, if you had been able to suppress the photocopies of the $20 bills that were put into evidence, it would have affected the outcome. But the jury--From a defense standpoint, this was a pretty good jury and it could have raised an issue in their minds which would have created a reasonable doubt. Isn't that also true?
>
> A. It could be. In fact, just to kind of go back on my testimony, the Attorney General asked me if suppressing or moving to quash the arrest warrants or the indictments would have had any success. I said, no. As to whether or not, if I had used that statute under research and got the bills excluded, it would have made a difference, I can't testify that it wouldn't have made a difference.

(ECF No. 8-2 at 143.) The court is not persuaded. The court does not believe that there is a "reasonable probability" that the result of Petitioner's trial would have been different, even if counsel had been successful in keeping out of evidence the photocopy of the money and Curry's testimony that the money was "buy money."

It is worth noting that Petitioner is not arguing herein that counsel was ineffective in failing to object to the admission of the bag of drugs found on the ground; the claims of ineffective assistance of counsel raised herein relate solely to the money (or photocopy of the money). Even without the photocopy of the cash, and even without Curry's testimony that the money was "buy money," the jury heard Moore's testimony that he purchased crack cocaine from Petitioner. That very crack cocaine was entered into evidence as Exhibit 2B. (ECF No. 8-1 at 77.) Not only was that crack cocaine admitted into evidence, but so was Exhibit 2C, which Curry testified was the "baggie that contained crack cocaine that [Petitioner] threw down…when we began chasing him." (*Id*.) In addition, the video of the transaction as it occurred that

day (which was admitted without objection), along with the other officers' testimony, corroborates Moore's testimony. Moore testified that when Petitioner asked to see his "stem," Moore asked to see Petitioner's badge, at which time Petitioner took out his wallet. (*Id.* at 106.) In his PCR testimony, Petitioner admitted that the video shows Petitioner taking out his wallet. (ECF No. 8-2 at 92.) Moore testified that Petitioner told him to drive around the block; although other officers heard very little of the conversation between Moore and Petitioner (and did not hear the conversation about buying drugs), the officers did hear Petitioner tell Moore to go around the block, just as Moore testified. (*Id.* at 52-53, 65-66, 80, 82-83.) When Petitioner realized that the police were present, he ran. (*Id.* at 84.)

Therefore, even assuming the photograph of the cash had been excluded, and Curry had not testified that the money was "buy money," there is not a reasonable probability that the results of Petitioner's proceeding would have been different. The elements of the offense of which Petitioner was convicted do not require the exchange of drugs for money, and here, Moore testified Petitioner gave him crack cocaine, and that very crack cocaine was admitted into evidence. *See State v. Watts*, 321 S.C. 158, 168 (Ct. App. 1996); *see also* S.C. CODE ANN. § 44-53-375(B) (2012); S.C. CODE ANN. § 44-53-110(17) (2016) ("'Distribute' means to deliver (other than by administering or dispensing) a controlled substance."); S.C. CODE ANN. § 44-53-110(10) (2016) ("'Deliver' or 'delivery' means the actual, constructive, or attempted transfer of a controlled drug or paraphernalia whether or not there exists an agency relationship."). *Cf. United States v. Crawford*, 87 F. App'x 890, 892 (4th Cir. 2004) ("Even if Crawford was merely supplying his roommate or other friends with marijuana without charge, such conduct constitutes distribution.").

In *Jones v. Clark*, 783 F.3d 987 (4th Cir. 2015), the trial judge, after a bench trial, found the petitioner guilty charges of grand larceny and breaking and entering. *Jones*, 783 F.3d at 989. The district court granted the habeas petition, determining that "trial counsel's failure to object to the admission of the fingerprint evidence constituted deficient performance that prejudiced Jones." *Id*. at 990. The petitioner therein pointed to the "trial judge's comments that the fingerprint evidence –when combined with other evidence – was sufficient to establish guilt" and argued "that the fingerprint evidence was essential to the guilty verdict, and without that evidence, there is a reasonable probability that he would have been acquitted." *Id*. at 992. The Fourth Circuit reversed the grant of habeas relief, stating,

> Having made that point, we readily acknowledge that the fingerprint evidence is strong evidence tending to establish Jones' guilt, and we do not doubt that the trial judge relied on that evidence to reach his verdict. However, the mere fact of the trial judge's reliance on that evidence does not establish *Strickland* prejudice. Rather, the determinative question for *Strickland* purposes is whether there is a reasonable probability that the trial judge would have had reasonable doubt respecting Jones' guilt if the fingerprint evidence had been excluded.

*Id*. The Fourth Circuit concluded the answer to that question was "no," stating,

> Even if the fingerprint evidence is removed from the equation, the admission of guilt, in conjunction with the evidence establishing the corpus delicti and the evidence that Jones had recently visited Joseph's house, is sufficient to establish Jones' guilt of the charged crimes beyond a reasonable doubt. Although it is "conceivable" that the trial judge may have acquitted Jones without the fingerprint evidence, we do not believe that there is a "substantial" likelihood that the judge would have done so.

*Id*. at 993.

The court finds *Jones* instructive. Even removing the evidence of the photograph of money, and Curry's testimony that the money was "buy money," the remaining evidence is – for the reasons set forth above – sufficient to establish Petitioner's guilt of the crime of distribution of crack cocaine beyond a reasonable doubt. *See Strickland*, 466 U.S. at 695 ("When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the

errors, the factfinder would have had a reasonable doubt respecting guilt."). Because there is not a reasonable probability the results of Petitioner's proceeding would have been different, the court grants summary judgment to Respondent as to the remaining two claims of ineffective assistance of counsel. *See Grueninger v. Dir., Va. Dep't of Corr.*, 813 F.3d 517, 524-25 (4th Cir. 2016) (where ineffective assistance of counsel claim is based on counsel's failure to file motion to suppress, the prejudice prong requires the petitioner to show "both (1) that the motion was meritorious and likely would have been granted, and (2) a reasonable probability that granting the motion would have affected the outcome of his trial" (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375)).

## V. CONCLUSION

Based on the foregoing, the court **GRANTS** Respondent's Motion for Summary Judgment (ECF No. 35) and **ACCEPTS** the Magistrate Judge's Report and Recommendation ("Report") (ECF No. 37).

## VI. CERTIFICATE OF APPEALABILITY

The law governing certificates of appealability provides that:

> (c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d

676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

March 28, 2018
Columbia, South Carolina